FILED
2021 NOV 23 PM 1:35
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MIKE SORENSON,<br><br>              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>              Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case #4:20-cv-00139-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Mike Sorenson's appeal of the Social Security Administration denial of his application for disability, disability insurance benefits, and supplemental security income. The Court held oral arguments on November 16, 2021. After considering the parties' arguments, reviewing the record and relevant case law, and being otherwise informed, the Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to

---

[1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

consider all of the evidence, although they are not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.    PROCEDURAL HISTORY

In January 2018, Plaintiff filed an application for supplemental security income and he filed an application for disability and disability insurance benefits in February 2018.[8] Plaintiff's claims were denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on May 27, 2020.[10] The ALJ issued a decision on July 6, 2020, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on October 21, 2020,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] *Id.* at 1009–10.
[5] *Richardson*, 402 U.S. at 390.
[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).
[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).
[8] R. at 249–256.
[9] *Id.* at 118–119, 150–51.
[10] *Id.* at 31–91.
[11] *Id.* at 7–25.
[12] *Id.* at 1–6.
[13] 20 C.F.R. § 422.210(a).

On December 17, 2020, Plaintiff filed his complaint in this case.[14] On January 8, 2021, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on April 12, 2021.[16]

Plaintiff filed his Opening Brief on April 30, 2021.[17] The Commissioner's Answer Brief was filed on June 28, 2021.[18] Plaintiff filed his Reply Brief on July 20, 2021.[19]

B.  MEDICAL HISTORY

Plaintiff claimed disability because of diabetes mellitus, type 1; arthritis of the back, hands, and feet; and hypertension.[20] Plaintiff stated that his diabetes and high blood pressure caused dizziness and fatigue, along with confusion, mood changes, and difficulty making decisions.[21] The medical record reflects that Plaintiff's diabetes was not well controlled and his compliance with treatment recommendations was sporadic.

In addition to these chronic illnesses, Plaintiff sustained traumatic injuries. In November 2017, Plaintiff fell and was missing for days in the desert.[22] Plaintiff was then hospitalized for

---

[14] Docket No. 3.
[15] Docket No. 11.
[16] Docket Nos. 15–16.
[17] Docket No. 19.
[18] Docket No. 23.
[19] Docket No. 25.
[20] R. at 287.
[21] *Id.* at 303.
[22] *Id.* at 604.

several days with diabetic ketoacidosis.[23] A CT scan at the time showed degenerative disc disease, which was greatest at C4-5.[24] A front-wheeled walker was recommended upon discharge.[25]

In early 2019, Plaintiff suffered another fall. Imaging revealed mild degenerative changes in the lower lumbar spine, sacroiliac joint, and left hip.[26] However, no acute fractures or dislocations were identified.[27] Later imaging showed a possible pubic bone fracture along with extensive degenerative disc disease of the lumbar spine with central canal stenosis from L3 to L5.[28] Plaintiff was also found to have a number of bulging discs.[29] Plaintiff was discharged with a front-wheeled walker.[30]

C.   HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff stated that he used to be a truck driver but lost his commercial driver license due to his diabetes.[31] Plaintiff also noted that he suffered two falls, one in 2017 and the other in 2019.[32] Plaintiff stated that he fractured his pelvis as a result of the

---

[23] *Id.* at 607.
[24] *Id.* at 598–99.
[25] *Id.* at 687.
[26] *Id.* at 453.
[27] *Id.*
[28] *Id.* at 1024.
[29] *Id.* at 1033–34.
[30] *Id.* at 1026.
[31] *Id.* at 51.
[32] *Id.* at 52, 61.

4

2019 fall.[33] Plaintiff testified that his hip and back issues make it difficult to walk and he uses a cane to ambulate.[34]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2019.[35] At step two, the ALJ found that Plaintiff suffered from the severe impairments of diabetes mellitus type 1 with neuropathy and disorder of the back.[36] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[37] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with certain limitations.[38] At step four, the ALJ determined that Plaintiff could not perform any past relevant work.[39] At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, he was not disabled.[40]

---

[33] *Id.* at 61.
[34] *Id.*
[35] *Id.* at 12–13.
[36] *Id.* at 13–14.
[37] *Id.* at 14.
[38] *Id.* at 14–18.
[39] *Id.* at 18.
[40] *Id.* at 18–20.

5

III. DISCUSSION

Plaintiff argues that the ALJ erred in finding him capable of medium work. Plaintiff also argues that the ALJ erred in failing to consider whether his diabetes compliance issues were caused by financial concerns.

A.  MEDIUM WORK

The ALJ found that Plaintiff was capable of medium work with certain limitations. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."[41] Plaintiff argues that finding him capable of medium work was error because he testified that he uses a cane[42] and was given a walker in February 2019.[43]

Under SSR 96-9p, the question is not whether Plaintiff uses a cane or has been given a walker, "but whether a cane was 'medically required.'"[44] To be medically required, there must be medical documentation supporting the need.[45] The ALJ did not accept Plaintiff's allegation that he needed a cane to stand or walk. The ALJ noted that "[n]o medical source has indicated that a cane is medically necessary for stabilization of gait and station."[46] The ALJ also pointed

---

[41] 20 C.F.R. § 404.1567(c).

[42] R. at 62.

[43] *Id.* at 1026.

[44] *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)).

[45] SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.").

[46] R. at 16.

to the evaluation by Julia Lewis, D.O., completed in May 2018.[47] After examining Plaintiff, Dr. Lewis stated that no assistive devices were recommended at that time.[48]

Plaintiff points to imaging showing a possible pelvis fracture and degenerative disc disease of the lumbar spine. However, he fails to identify medical documentation supporting the need for a hand-held assistive device. Instead of pointing to such evidence, Plaintiff attacks the ALJ's reliance on Dr. Lewis' assessment. Plaintiff argues, correctly, that Dr. Lewis evaluated Plaintiff prior to his fall in 2019. Thus, Plaintiff argues, Dr. Lewis' evaluation does not constitute substantial evidence to support the ALJ's finding regarding Plaintiff's use of a cane. This argument misses the point. It is true that Dr. Lewis evaluated Plaintiff prior to his 2019 fall, thereby diminishing its probative value. However, there is still no evidence—from Dr. Lewis or any other source—that shows that a hand-held assistive device is medically required.

Plaintiff also argues that the ALJ's finding that Plaintiff does not require an assistive device for "minimal ambulation" conflicts with an RFC of medium work. The ALJ's statement on this point is confusing but does not require reversal. The ALJ stated that "Dr. Lewis opined a hand held medical device is not medically necessary for minimal ambulation."[49] A review of Dr. Lewis' evaluation contains no such opinion. Instead, she simply states that "[t]here are no assistive devices recommended at this time."[50] It is unclear why the ALJ limited Dr. Lewis' opinion to "minimal ambulation" since Dr. Lewis provided no such opinion. Instead, Dr. Lewis

---

[47] *Id.* at 386–92.
[48] *Id.* at 391.
[49] *Id.* at 16.
[50] *Id.* at 391.

7

opined that there were no limitations regarding the number of hours Plaintiff could walk during a normal workday. Further, the ALJ's RFC assessment does not limit Plaintiff to minimal ambulation. Though poorly worded, the ALJ's decision on this point was not reversible error.

Plaintiff also takes issue with the ALJ's failure to account for an alleged limitation contained in Dr. Lewis' evaluation. With respect to manipulative recommendations, Dr. Lewis stated: "Consider increased frequency of breaks to improve work performance."[51] It is doubtful such a statement is a medical opinion within the meaning of the regulations.[52] Even if so, the Court cannot read as much into Dr. Lewis's statement as requested by Plaintiff. Dr. Lewis did not opine that Plaintiff needed increased breaks in general. Instead, her suggestion of increased breaks is related solely to manipulative restrictions. In particular, Dr. Lewis noted that Plaintiff's diabetic neuropathy would make continuous work with grasping, handling, fingering, and feeling "difficult."[53] The ALJ accounted for these limitations in his RFC assessment, noting that Plaintiff could "not continuously finger and handle objects bilaterally."[54] Therefore, there is no conflict in the RFC assessment and Dr. Lewis' opinion.

B.  DIABETES COMPLIANCE

The ALJ noted that Plaintiff's diabetes was not well controlled and Plaintiff's compliance with treatment was poor. Plaintiff argues that the ALJ failed to account for the possibility that

---

[51] *Id.*

[52] 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions.").

[53] R. at 391.

[54] *Id.* at 14.

his poor compliance was due to financial difficulties. If Plaintiff was "unable to follow a prescribed regimen of medication and therapy to combat [his] disabilities because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits."[55] Initially, it must be noted that the ALJ did not deny benefits simply because Plaintiff's compliance with recommended treatment was poor. "Rather, the ALJ properly considered what attempts plaintiff made to relieve his" condition "in an effort to evaluate the veracity of plaintiff's contention that his [condition] was so severe as to be disabling."[56] This was proper.

Even assuming that the ALJ erred in failing to consider whether Plaintiff's poor compliance was a result of financial hardship, the ALJ provided other reasons for concluding that Plaintiff's diabetes was not as limiting as Plaintiff alleged. In particular, the ALJ relied on Plaintiff's self-reported wide range of functioning.[57] Plaintiff does not challenge this finding, which is supported by substantial evidence. Therefore, the ALJ's decision on this point will be affirmed.

---

[55] *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992); *see also Allen v. Apfel*, 216 F.3d 1086, at *3 (10th Cir. 2000) (unpublished table decision) (citing *Murphy*); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("When we consider the individual's treatment history, we may consider" that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services.").

[56] *Qualls*, 206 F.3d at 1372.

[57] R. at 16 (citing R. at 381–83).

## IV. CONCLUSION

Accordingly, the Court hereby AFFIRMS the decision below.

DATED: 23 November 2021

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge